[No. 3994.]

## HUGHES v. KERR ET AL.

1. APPEAL AND ERROR—*Harmless Error.* An agreement between plaintiff and defendants provided that upon sales of land made by defendants to parties directed to them by plaintiff, plaintiff should receive two-thirds of all profits made. Defendants, dealing with one McClure, sent to them by plaintiff, sold to him certain of their own land, but as they asserted, were required, in order to affect the sale, to take in exchange lands of McClure, at an excessive valuation; that they traded these for other lands, which they afterwards sold, gaining in the three transactions no profit at all. The court charged that the defendants were not justified in denying plaintiff "his share of the profits on account of the McClure trade, unless he was a party to the last two transactions, *provided always profits were made.*" *Held,* that though the words italicized, not being clearly limited to the transaction with McClure, made the instruction ambiguous, the error was not sufficient to justify a reversal. (163, 168, 169)

2. —— *Questions not presented below,* will not be considered, *e. g.* failure to instruct where no instruction is prayed. (171)

3. PRINCIPAL AND AGENT—*Liability of Agent for Acts or Representations of Associate.* Defendants had agreed with the plaintiff to allow him a share of the profits on all lands sold by them to any person directed to them by plaintiff, and plaintiff had agreed to "deal with no other person," etc. Plaintiff demanding a share of the profits alleged to have been made by defendants in a sale to one McClure, who resided in Kansas, it appeared that one Baker, who was associated with plaintiff, and who also resided in Kansas, had on the occasion of McClure's visit to Colorado, at the time of his purchase, recommended to him to see another firm of land agents, who he stated, were more reliable than defendant. The court charged that in this Baker was guilty of bad faith, and "being the agent of plaintiff, such act was the act of plaintiff, and he thereby forfeited all rights to profits, upon the sale to McClure."

It appearing, that while Baker was acting as the representative of plaintiff, he was also acting in an independent capacity, as the agent of others, and among them McClure, the instruction was prejudicially erroneous, because assuming that in the statement imputed to him Baker was acting as the agent of plaintiff, and because even though Baker was in fact acting for plaintiff, in making the statement attributed to him, it was not to be conceded as matter of law that plaintiff, though Baker acted without his consent, knowledge or ratification, forfeited his right to share in the profits in the sale made to McClure. (169)

4. ADMISSIONS—*In Pleading.* The answer conceded that plaintiff was entitled to a sum named, and offered to permit judgment for that amount. This offer was afterwards withdrawn, the admission however remaining. *Held,* that upon this admission, and matters in proof, plaintiff was entitled to a directed verdict for the amount admitted. (171)

*Error to Rio Grande District Court.* HON. CHAS. C. HOL-
BROOK, Judge.

MR. JAMES P. VEERKAMP for plaintiff in error.

MR. JESSE STEPHENSON for defendants in error.

KING, J., delivered the opinion of the court.

Suit was brought by plaintiff in error, hereinafter desig-
nated as plaintiff, to recover from defendants compensation
for services performed as a real estate agent in procuring a
purchaser for land offered for sale by defendants.

The suit is based upon a written contract dated March
23, 1910, in which defendants were parties of the first part,
and plaintiff was a party of the second part. It provided, in
substance, that upon any sales of land made by parties of
the first part, to any person directed to them by the second
party, he should receive from the first parties *two-thirds of
all profits* over and above the price of lands owned by first
parties, held by them upon option, or listed with them for
sale, and that "all profits, either in cash, notes, stock or lands,
shall belong to and shall be turned over to each party of
this contract immediately after such sales are closed. All
earnest money shall be divided in the above same manner."
It was further provided that the second party was to pay
all of his own traveling expenses, and deliver buyers to the
first parties free of charge, and that the first parties were to
give the second party a net price of all lands owned by them,
listed with them for sale, or upon which they had options.
The agreement also contained the following provision:

"It is further agreed that party of the second part is to
deal with no other agency in the San Luis Valley during the
life of this contract, but to deal exclusively with the parties
of the first part."

The contract was to remain in full force for twelve
months from its date, unless cancelled by mutual consent of
the parties.

The complaint alleged that pursuant to the contract, plaintiff procured and directed to the defendants, to purchase land, one A. L. McClure, who was accompanied to the defendants at their place of business, and introduced to them by plaintiff as a prospective buyer of land, and that afterwards, as a result of plaintiff's efforts in directing and introducing him to the defendants, they sold him certain lands for $16,000; that defendants named to plaintiff as the net cost or price of said land the sum of $12,000; that the profits realized for such sale was $4,000, of which plaintiff claimed two-thirds, or $2,666.66; that defendants had offered to pay plaintiff $416.66, and no more. Defendants admitted the contract; that plaintiff accompanied said McClure to defendants' place of business and introduced him as a prospective land buyer; that defendants sold to said McClure a parcel of land belonging to defendant Graves, and that the price of said land mentioned and agreed upon in the sale was $100 an acre, or $16,000; but alleged that the sale was made by taking in exchange a half-section of land in Kansas, belonging to said McClure, at a price greatly in excess of its real value, and that for the purpose of making the trade they placed an excessive or inflated value upon their own land; that its real price or value, and the price listed with plaintiff was $80 an acre, and that no *profits* were made upon the sale or exchange; admitted that they offered to pay plaintiff a commission upon the basis of $5 an acre for the land sold, after deducting certain expenses, offered to permit judgment for the plaintiff in the sum of $441.66, and asked that judgment for that sum be entered in favor of the plaintiff; but denied generally all other allegations of the complaint, and alleged that plaintiff had violated the contract long before said sale to McClure; that at the time the sale was made, said McClure came to the town of Monte Vista, where defendants were doing business, in company with other real estate agents in no way connected with the plaintiff. The new matter in the answer was put in issue by replication. Upon a verdict of the jury, judg-

ment was rendered in favor of the defendants, from which plaintiff sued out his writ of error.

The assignments of error pertain chiefly to instructions of the court, the correction of which will require consideration of the evidence.

Plaintiff was a real estate agent or broker, with headquarters at Denver. He had an Eastern connection at Grainfield, Kansas, where he was represented by a real estate agent named Baker. Defendants were located and had an office at Monte Vista, Colorado, in the San Luis valley. A. L. McClure owned a farm near Grainfield, Kansas. Through the efforts of plaintiff and said Baker, McClure went to Denver, and was taken to the San Luis valley, and introduced to defendants by plaintiff. It was McClure's purpose, communicated to the defendants, to make an exchange of his farm in Kansas for lands in Colorado. No trade was made at this visit; McClure returned to Kansas. Later in the year he returned to Denver, intending to go to Monte Vista, but plaintiff could not go with him at that time, but telephoned the defendants that McClure was coming to see them. McClure, however, returned to Kansas. Not long after, he returned to Colorado, but did not at that time see the plaintiff. He went to the San Luis valley with real estate agents located at Colorado Springs, known as the Haigler Investment Company, who tried to sell him some lands listed with them, but not including the lands which he afterwards bought; not being pleased with the lands offered by the Haiglers, McClure went to the office of the defendants, reopened negotiations for the exchange of his land as on his first visit; after making a price upon his land of twenty-five dollars an acre, and receiving an offer of defendants' land at $100 an acre, and after defendant Graves had gone to Kansas with McClure and inspected his land, the exchange or sale set forth in the pleadings was effected on the basis of the values aforesaid. Soon thereafter plaintiff was notified by said Baker of this sale, and later by defendants, who notified plaintiff that as

soon as the deal was thoroughly closed they would settle with him for two-thirds of the profits. After the trade between McClure and Graves was concluded, defendants traded the Kansas land for other land, which they thereafter sold, and contend that in the three trades made they lost money, instead of making a profit, and therefore plaintiff was entitled to no compensation for his services. Defendant Kerr, however, testified that they had told plaintiff that he would not be asked to deal on less than five dollars an acre, and for that reason they put the profits at $800, and offered to pay plaintiff on that basis, after deducting $137.50 which they had paid to Baker—one-half of a commission claimed by him as agent for McClure, and which they paid upon some agreement made between defendants and McClure.

As a sample of the evidence upon which the instructions to be considered were given, we quote from the testimony of defendant Kerr:

"Q. Didn't you try to keep this deal from Mr. Hughes? A. No, sir; Mr. Hughes was in our office in March, when Mr. McClure was there, and knows that this deal was pending; and about the trouble between the commission of Mr. McClure and Mr. Baker; and he sent several telegrams right in our office regarding it.

Q. Then Mr. Hughes really knew that this deal was going on, and you regarded it all the time, that he was Mr. Hughes' man, in making this deal? A. Yes, sir.

Q. And if there was a profit, he was entitled to two-thirds? A. Yes, sir.

Q. Your contention is that there was no profit? A. Yes, sir. * * *

Q. You notified Mr. Hughes? A. Yes, sir.

Q. You knew that Mr. Hughes had quite an interest in this matter? A. Yes, sir.

Q. And you know, if there was any profits, that he was entitled to two-thirds of it? A. Yes, sir; whenever it is due.

Q. And you owe it under this contract? A. Yes, sir; if there is anything due, he is entitled to two-thirds of it.

Q. And you say you sold the Kansas land for more money than you gave for it? A. I said that there was three trades in one. It was put in at more money, but I can say that we did not realize a dollar."

In closing up the transaction, defendants took McClure's secured notes for an amount approximating $1,500, which Kerr stated was the difference between encumbrances on the respective parcels of land.

McClure was offered as a witness for plaintiff, and during the cross-examination testified as follows:

"Q. Then the second—or the time you did trade for the land, did you come to Denver, or Colorado Springs first? A. I came to the Springs, yes, sir.

Q. Did Mr. Baker come with you, or did you come alone? A. I came alone.

Q. What people did he send you to see at Colorado Springs? A. The Bill Haigler Company.

Q. The Haigler Investment Company? A. Realty company.

Q. It is this Billy Haigler, this man that the people call Billy Haigler, that goes around to herd the folks? A. I expect.

Q. Do you know that he is the same man? A. I did not see the old man when I came out.

Q. You came with his people, that is, the agents in Colorado Springs, did you? A. I came with them.

Q. Why did Mr. Baker say he was sending you there? A. He said he had a notion to quit Kerr & Company, but I don't say that he did, or anything of that kind. He said that he thought the Haigler people was a little more reliable people.

Q. And then he recommended you to come out to Billy Haigler's, did he? A. Yes, sir.

Q. And then you got with the Haiglers' agents down to Monte Vista, did you? A. Yes, sir; I came to Monte Vista.

Q. With the Haiglers? A. Yes, sir. * * *

Q. You didn't go to Mr. Kerr's office that morning, did you? A. No, sir, I did not. * *. *

Q. What land did they (the Haiglers) show you? A. They showed me some deeded land. Of course, I told them that I wanted a place that was fairly well improved, so I could move onto it and it would be all right; and they showed me a couple of state leases. They did not say it was a state lease until they came back to the office, and I says, 'I supposed you had—you was describing some deeded land to me; something that you could put up a warranty deed,' I said. 'If you haven't got it, gentlemen, you can take me back to Monte. I am through with it.'

Q. Did you come back? A. Yes, sir.

Q. And then you went and traded with Mr. Kerr? A. Yes, sir.

Q. When you saw Mr. Kerr, now, then, you had come on that trip from Colorado Springs with the Haigler outfit? A. Yes, sir; I did.

Q. And not with Mr. Hughes, had you? A. I was not with Mr. Hughes that trip.

Q. You were directed by Mr. Hughes' agent in Grainfield to go to the Haiglers? A. Yes, sir.

Q. And he told you they were more reliable people than C. C. Kerr & Company? A. I thought that was his business—his view of it.

Q. I say, you were told that at the time? A. Yes, sir."

Two instructions only will be considered. The court instructed the jury that the fact that defendants had traded the land obtained from McClure for other land, which latter tract they afterwards sold, as testified to by defendant Kerr, would not justify the defendants in refusing to pay plaintiff "his share of profits on account of the McClure trade, unless the plaintiff was a party to the last two transactions, *provided, always, profits were made.*" Objection was made to the instruction, because of the addition of the words italicised.

We think the instruction as given was ambiguous, in that the question of whether profits were in fact made was not clearly limited to the first transaction between defendants and McClure. However, the objection is highly technical, and the error not alone sufficient to justify a reversal.

The following instruction, predicated wholly on the testimony of McClure, quoted, was given over the objection and exception of plaintiff, and is assigned as error:

"You are instructed that if you find from the evidence that Baker, whom the plaintiff testified was his agent in Gove County, Kansas, sent the purchaser, McClure, to Colorado to purchase land, and at the time of so directing him to make the trip for that purpose, the agent told McClure that he had quit the employ of C. C. Kerr and Company, defendants herein, and directed him to go to the Haigler Investment Company, or to 'Bill Haigler's crowd,' to purchase land, for the reason that they were more reliable and better people than the defendants, C. C. Kerr and Company, that by so doing the agent, Baker, was guilty of an act of bad faith, and that, being the agent of the plaintiff, such act was the act of the plaintiff, and he thereby broke the contract upon which this action is based, and forfeited all right to profits in the sale of lands to McClure, if they were made, and your verdict should in that event, therefore, be in favor of the defendants."

We think the instruction was prejudicially erroneous. The evidence shows beyond any question that while Baker was acting at Grainfield, Kansas, as the representative of plaintiff, he was also acting in an independent capacity as agent for others, including McClure. There is nothing in the evidence upon which to base the instruction that if the jury believed that at the time Baker directed McClure to make the trip to purchase land, said Baker, as agent for Hughes, told McClure that he (Baker) *had quit the employ* of C. C. Kerr & Company, nor that he sent McClure to the Haigler Investment Company, or the "Bill Haigler crowd," "to purchase

land, for the reason that they were more reliable and better people" than the defendants. The instruction is manifestly erroneous, in that it misquotes the testimony upon which os- tensibly it was predicated. Moreover, the testimony is wholly insufficient to justify the court in instructing the jury, as a matter of law, that if Baker did make to McClure the statements testified to by McClure, in so making the statements Baker was acting as the agent of the plaintiff, and therefore plaintiff himself was guilty of an act of bad faith, and thereby broke the contract upon which the action is based; or that if such act should by the jury be believed to have been done as the agent of plaintiff, but without his consent, knowledge or ratification, that the plaintiff thereby, as a matter of law, forfeited all rights to profits in the sale of lands to McClure, if profits were made. Such conclusion seems to us inconsistent with good reason and common justice. The question of whether the statements made by Baker were made as the agent of plaintiff, or of McClure, or, as the language testified to indicates, his own individual act, and whether in so making them, the agent, Baker, was guilty of an act of bad faith which should be regarded as the act of the plaintiff, is a matter which should have been submitted to the jury upon appropriate instructions, and not assumed by the court as a matter of law. Nothing herein is to be taken as holding that, even had the plaintiff himself made to McClure the statements attributed to Baker, that fact alone would operate as a forfeiture of his right to recover for profits, in the absence of any showing of prejudice to defendants. It is obvious that if consideration was given by the jury to this instruction, as we must assume it was, the verdict might have been rendered in favor of the defendants, although the jury fully believed from the evidence that large profits were made in the trade between defendants and McClure, and that, as alleged by plaintiff, and apparently admitted by defendants, the sale was the direct result of the services of plaintiff in procuring the purchaser. *Prima facie,* the trade admitted resulted in gross

profits of $3,200, accepting defendants' version of the net list price of the land.

As the judgment must be reversed and the cause remanded for new trial, it will not be necessary to give particular attention to other errors assigned. While the defendants at the opening of the trial, withdrew their offer of judgment in favor of plaintiff for $441.66, they did not withdraw the admissions upon which the offer was made, and it would seem, from such admissions and the proof, that plaintiff was entitled to an instructed verdict for at least that amount, if within the allegations of the complaint or in issue by the pleadings. However, no instruction of that kind was requested by plaintiff, nor was motion made to amend the pleadings to conform to the proof in that respect, for which reason the errors assigned upon failure of the court to give such instruction cannot be sustained.

The judgment is reversed and the cause remanded for a new trial, with directions to permit the parties to amend their pleadings as they may be advised.

*Reversed and Remanded.*